UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christopher Phillips, # 277082,<br>*aka Christopher Shane Phillips,* | ) C/A No. 2:10-2956-HFF-BHH<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Report and Recommendation<br>) |
| Warden Bernard McKie; Andrea Thompson;<br>Dennis Patterson; Yvonne Lofton; Jon E. Ozmint, | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

Petitioner, a state prisoner in the custody of the South Carolina Department of Corrections (SCDC) in Kirkland Correctional Institution (KCI), in Columbia, South Carolina, proceeding *pro se* and *in forma pauperis*,[1] brings this mandamus-type action, filed on a state prisoner's complaint form for actions brought pursuant to 42 U.S.C. § 1983[2], against Defendants: KCI Warden Bernard McKie; SCDC staff members Andrea Thompson, Dennis

---

[1] Pursuant to 28 U.S.C. §636(b)(1), and D.S.C. Civ. R. 73.02(B)(2)(b) and (e), the undersigned United States Magistrate Judge is authorized to review all motions for leave to proceed *in forma pauperis* and all pretrial proceedings involving litigation by individuals proceeding *pro se,* and to submit findings and recommendations to the District Court.

[2] Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law." *See Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using their badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *See McKnight v. Rees*, 88 F.3d 417(6th Cir. 1996). In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

1

Patterson, and Yvonne Lofton; and SCDC's (former) Commissioner Jon E. Ozmint.[3] The case is presently before the undersigned United States Magistrate Judge for report and recommendation following pre-service review.

Petitioner's Complaint asserts that he "want[s] the court to order SCDC to transfer [him] to another state or to be taken into feder[a]l custody and place[d] on protective custody." ECF No. 1, p. 5. Plaintiff also seeks "10 million dollars" "for being held with [his] life in danger from 5-08-08 [un]til 11-1-10" and "for the suffering [he has] been put into." ECF No. 1, p. 5. Plaintiff alleges that he is "a high risk inmate and [his] life is in danger and at risk in this state." He alleges that he is "on state wide protective custody" and "cannot go into population in SC at all" and "can't go to school [,] get any sex offender treatment, work, take drug classes or do anything to better [him]self in any kind of way." Plaintiff alleges that "inmate are dashing [him] with body fluids [and] officers won't do any thing about it at all." Plaintiff alleges that "they keep telling [him that he has] got to pay to get transfer[red] to another state and [he] do[es]n't get any money at all [;] they have transfer[r]ed other inmates without money [;] SCDC should not be allowed to charge inmates money anyway." ECF No. 1, p. 3.

## *PRO SE* AND *IN FORMA PAUPERIS* REVIEW

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint pursuant to the procedural provisions of 28 U.S.C. § 1915; 28 U.S.C. § 1915A; and the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110

---

[3] Title 28 U.S.C. § 1915A(a) requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."

Stat. 1321 (1996).  This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); and *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

The Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit.  To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  A finding of frivolousness can be made where the complaint "lacks an arguable basis either in law or in fact." *Denton*, 504 U.S. at 31.  Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte.* *Neitzke*, 490 U.S. 319; *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995).

This Court is required to liberally construe *pro se* complaints.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Id.*; *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true.  *Erickson*, 551 U.S. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure

3

in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)

## **DISCUSSION**

Plaintiff is serving a forty-year sentence for first degree criminal sexual conduct. *See* ECF No. 1, p. 3; SCDC incarcerated inmate search website: https://sword.doc.state.sc.us/incarceratedInmateSearch/ (last visited February 11, 2011).[4]

Although both state and federal prisoners retain many constitutional rights, incarceration inherently limits certain constitutional rights of prisoners. When a person is lawfully convicted and confined to jail, he or she loses a significant interest in his or her

---

[4] The court may take judicial notice of factual information located in postings on government websites. *See McCormick v. Wright,* No. 2:10-cv-00033-RBH-RSC, 2010 U.S. Dist. LEXIS 13799 at *6-7 n. 5(D. S.C. Jan. 15, 2010) *adopted by, dismissed without prejudice by McCormick v. Wright*, 2010 U.S. Dist. LEXIS 13726 (D.S.C., Feb. 17, 2010); *In re Katrina Canal Breaches Consolidated Litigation*, No. 05-4182, 2008 U.S. Dist. LEXIS 86538 at *2 (E.D. La. Sept. 8, 2008)(collecting cases indicating that federal courts may take judicial notice of governmental websites, including court records); *Williams v. Long*, 585 F. Supp. 2d 679, 686-88 & n. 4 (D. Md. 2008)(collecting cases indicating that postings on government websites are inherently authentic or self-authenticating).

liberty for the period of the sentence.  *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).  Under *Sandin v. Conner*, 515 U.S. 472, 484 (1995), an inmate is entitled to a limited right of due process *only* if a challenged official action or condition of his or her confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,"[5] which, in the Fourth Circuit, has been held ***not*** to include: placement or retention in segregated protective custody[6]; disciplinary detention; segregated administrative confinement[7]; denial or loss of prison job[8]; denial of permission to participate in work release[9], or loss of canteen, visitation, and phone privileges.[10]

Plaintiff does not have a constitutional due process claim relating to his classification for custody purposes.[11]  The South Carolina Code of Laws vests exclusive authority

---

[5] For example, physical restraint, transfer to a mental hospital, or the involuntary administration of psychotropic drugs.  *See Sandin,* 515 U.S. at 483-84.

[6] *See Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984).

[7] *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

[8] Inmates have no federally protected interest in a job assignment.  *Williams v. Farrior*, 334 F. Supp. 2d 898, 904 & n.9 (E.D. Va. 2004).

[9] *See Kitchen v. Upshaw*, 286 F.3d 179, 189 (4th Cir. 2002)

[10] *See United States v. Alkire*, No. 95-7885, 1996 U.S. App. LEXIS 7021 at *1 (4th Cir. Apr. 10, 1996) (no constitutional right to the use of a phone while in prison); *Goodwin v. Schwartz,* C/A No. 8:10-1760-CMC-BHH, 2010 U.S. Dist. LEXIS 91504 at *4 (D.S.C. Aug. 11, 2010) *adopted by, dismissed without prejudice by Goodwin v. Schwartz*, 2010 U.S. Dist. LEXIS 91506 (D.S.C., Sept. 1, 2010)(canteen access is not a protected liberty interest); *White v. Keller,* 438 F. Supp. 110, 115 (D. Md. 1977) ("there is no constitutional right to prison visitation").

[11] The Court takes judicial notice of Plaintiff's prior proceedings in this Court.  *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989)("We note that '[t]he most frequent use of judicial notice is in noticing the content of court records.'")  In *Phillips v. South Carolina Department of Corrections*, 8:10-1331-HFF-BHH  (summarily dismissed without prejudice), Plaintiff styled his § 1983 complaint as one involving

5

---

protective custody matters, but in which he actually sought a transfer to a prison outside of South Carolina because he allegedly feared for his life. In *Phillips v. McKie,* 8:10-2330-HFF-BHH  (summarily dismissed without prejudice), Plaintiff filed a § 2254 petition for writ of habeas corpus, alleging that he was unlawfully convicted and sentenced in state court and seeking a reduced sentence or a pardon. In *Phillips v. Ozmint,* 8:09-2108-HFF-BHH (voluntarily dismissed by Plaintiff after the Court filed a Report and Recommendation recommending the dismissal of his complaint as frivolous), Plaintiff alleged that SCDC's statewide protective custody program was not being properly administered and that his life was in danger. In *Phillips v. Warden*, 8:08-353-HFF-BHH (dismissed with prejudice for lack of prosecution and failure to comply with this Court's orders), Plaintiff alleged that his life was in danger and he needed to be placed into protective custody by SCDC.

In *Phillips v. Warden*, C/A No. 8:08-353, this Court liberally construed Plaintiff's allegations in a letter to the Court as a motion for a temporary restraining order and held a hearing at which it was determined that Plaintiff was already in protective custody at McCormick Correctional Institution and that SCDC had no intention of moving him out of his present custody situation, for his own safety. The Court found that:

> The likelihood of harm to the plaintiff, which is the overarching concern here, appears to be substantially diminished by the fact that the plaintiff has already been removed from the general population. The defendant has also requested from the plaintiff the specific names of threatening inmates but the plaintiff has declined to reveal any. Accordingly, it appears that the defendant [i]s [ ] affording the plaintiff all the protection presently available. It does not seem that the defendant is being deliberately indifferent to the plaintiff's concerns in a way that would allow him to prevail on the merits. Thus, a TRO should not issue at this time.
>
> Notwithstanding, the defendant did acknowledge that the plaintiff may qualify for state-wide protective custody at the Kirkland Correctional Institution. As a part of this report and recommendation, the Court strongly encourages the defendant to recommend the plaintiff for such custody, as counsel for the defendant represented at the hearing he would. The Court would further emphasize to the defendant that he is on specific notice of the allegations of the plaintiff that he is in serious physical danger. It would be prudent to extend to him all reasonable protection and consideration in response to those claims.

Report and Recommendation, *Phillips v. Warden*, 8:08-353-HFF-BHH (D.S.C. Feb. 4, 2008) ECF No. 10, p. 5. *adopted and incorporated by* Order, *Phillips v. Warden*, 8:08-353-HFF-BHH (D.S.C. June 18, 2008) ECF No. 36.

In the instant case, Plaintiff filed, as an attachment to his Complaint, a copy of his

relating to the care and housing of prisoners on SCDC's Director and places no limitations on official discretion.  *See* S.C. Code Ann. §§ 24-1-130,  24-1-140,  24-3-20, 24-3-30. Federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control.  *See Wolff v. McDonnell*, 418 U.S. 539, 558-62 (1974), and it is well established that there is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution.  *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Ange v. Paderick*, 521 F.2d 1066 (4th Cir. 1975); *Lyons v. Clark*, 694 F. Supp. 184, 187 (E.D. Va. 1988)(collecting cases).  In other words, the placement and assignment of inmates into particular institutions or units by state or federal corrections departments are discretionary functions, and, generally, are not subject to review *unless* state or federal law places limitations on official discretion.  *Hayes v. Thompson*, 726 F.2d 1015, 1016-17 (4th Cir. 1984)(collecting cases) or such placement/assignment meets the *Sandin* test.

It is known from other cases previously decided in this judicial district that South Carolina law confers no protected liberty interest upon SCDC inmates from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison.  *See, e.g.*, *Keeler v. Pea*, 782 F. Supp. 42, 43-44 (D. S.C. 1992)("Segregation is one of the conditions of confinement typically contemplated when a person receives a prison sentence; therefore, it is neither cruel and unusual, nor is it a

---

SCDC "SMU Institutional Classification Committee Review," dated October 27, 2010, which indicates that he was placed in state-wide protective custody in SMU at KCI on May 8, 2008.  KCI's ICC met on October 27, 2010 to conduct a regularly scheduled 30-day review and recommended that Plaintiff remain in protective custody status.  The ICC stated that its decision was justified "due to no significant change in the degree of protection that the agency can provide." ECF No. 1-2, p. 1.

violation of due process.")(*citing Meachum v. Fano*, 427 U.S. 215 (1976)); *Vice v. Harvey*, 458 F. Supp. 1031, 1034 (D. S.C. 1978).  It is well settled that the placement of inmates into administrative segregation units or similar units is a valid means of minimizing a "threat to security of the institution, threat to the safety of other residents or jail staff, etc."  *Jackson v. Bostick*, 760 F. Supp. 524, 528 (D. Md. 1991);  *see Hewitt v. Helms*, 459 U.S. 460, 468 (1983)("The transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); *Anderson v. County of Kern*, 45 F.3d 1310, 1312 (9th Cir. 1995)(prison officials have legitimate penological interest in administrative segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"); *see also Montanye v. Haymes*, 427 U.S. 236, 242 (1976)(if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight").  Since Plaintiff was committed to the custody SCDC, the choices of where and how Plaintiff is to be confined are to be determined by the SCDC.  Additionally, the Fourth Circuit has stated that "[t]he duration of an inmate's stay in segregation is not controlling on the issue of cruel and unusual punishment, even when that duration is quite long."  *Ross v. Reed*, 719 F.2d 689, 697 (4th Cir. 1983).

      Plaintiff specifically alleges that he is being denied access to various vocational, rehabilitation, and education programs.  (ECF No. 1, p. 3).  Plaintiff implies that, because he is in state-wide protective custody and does not have these privileges available to prisoners in SCDC's general population, his placement in protective segregation

contravenes the equal protection clause of the Fourteenth Amendment. The test applicable to determine whether there is a violation of equal protection between inmates in the general prison population and those in protective segregation is to inquire only whether the challenged distinction is reasonably related to legitimate penological interests. *See Mickle v. Moore (In re Long Term Admin. Segregation of Inmates Designated as Five Percenters,* 174 F.3d 464, 468 (4th Cir. 1999) (*citing Turner v. Safley*, 482 U.S. 78, 89 (1987), *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *see also Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984).[12] Although such programming may serve an important rehabilitative function, the law is well settled that an inmate has no constitutional right to participate in a rehabilitative program. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988)(state has no constitutional obligation to provide basic educational or vocational training programs to prisoners)(citing *Newman v. State of Alabama*, 559 F.2d 283, 292 (5th Cir. 1977), *rev'd in part on other grounds sub nom.*, *Alabama v. Pugh*, 438 U.S. 781 (1978)); *Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982)(individuals serving criminal sentences have no constitutional right to rehabilitation while in prison); *McCray v. Sullivan*, 509 F.2d 1332, 1335 (5th Cir.), *cert. denied*, 423 U.S. 859 (1975)(failure to provide rehabilitation, by itself, does not constitute a violation of Eighth Amendment); *Abdul-Akbar v. Department of Corrs.*, 910 F.Supp. 986, 1002 (D.Del.

---

[12] "Protective segregation is offered to inmates for their safety, the safety of others in confinement, and to insure institutional security and order. To allow prisoners in protective segregation to enjoy all of the same privileges to the same degree as those in the general population would eviscerate the value of protective segregation. Because the difference in treatment among prisoners in protective segregation and in the general population has a substantial, rational basis in the legitimate state interest of prison security, we hold that Allgood's rights to equal protection have not been abridged," *Allgood,* 724 F.2d at 1101.

1995)(no right to drug treatment, employment, or other rehabilitation, education, or training programs in prison); *Harris v. Murray*, 761 F. Supp. 409 (E.D. Va. 1990) ("[T]here is no constitutional right to an institutional job or, in fact, to rehabilitation at all."). With regard to mental health and therapy programming, such rehabilitation is also not constitutionally required. *See Bowring v. Godwin*, 551 F.2d 44, 48 n.2 (4th Cir. 1977). Thus, such allegations by Plaintiff fail to allege a constitutional violation of the equal protection clause of the Fourteenth Amendment. *See Joe v. Ozmint*, C.A. No. 2:08-0585-PMD-RSC, 2009 U.S. Dist. LEXIS 91843 at *22-23 (D.S.C. June 29, 2009) *adopted by, summary judgment granted by, claim dismissed by, dismissed without prejudice, in part, by Joe v. Ozmint*, 2009 U.S. Dist. LEXIS 91842 (D.S.C. Sept. 29, 2009).

Having determined that no constitutionally protected liberty interest exists in Plaintiff's classification claims so as to implicate the protections of the Fourteenth Amendment's due process or equal protection clauses[13], the Court must now determine whether Plaintiff's allegations state a plausible claim that Defendants violated Plaintiff's Eighth Amendment rights. Plaintiff alleges that "inmate are dashing [him] with body fluids [and] officers won't do anything about it at all." (ECF No. 1, p. 3). The Eighth Amendment's prohibition against "cruel and unusual punishment" imposes affirmative duties on prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v.*

---

[13] *See Taylor v. Rogers*, 781 F.2d 1047, 1050 (4th Cir. 1986)("[I]t is the majority view in this circuit, by which we are bound, that conditions imposed on prisoners requesting protective custody less favorable than those afforded the general prison population do not give rise to a meritorious claim of denial of equal protection or a denial of due process where the restrictions bear a rational relationship to the protection of the prisoner requesting such relief and where the restrictions are not so onerous as to jeopardize his health.")

*Brennan*, 511 U.S. 825 (1994) (citations omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. In order to state a plausible Eighth Amendment claim, a prisoner must prove both an objective element - that the deprivation was sufficiently serious - and a subjective element - that a prison official acted with a sufficiently culpable state of mind. In prison conditions cases, the requisite state of mind is one of "deliberate indifference to inmate health or safety." *Id.* Based on the United States Supreme Court's holding in *Farmer*, deliberate indifference is established if "a prison official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. Thus, "a prison official may be liable under the Eighth Amendment for denying humane conditions only if he knew that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847; accord *Taylor v. Freeman*, 34 F.3d 266, 271 (4th Cir. 1994).

For a claim, like the one here, based on an alleged failure to prevent harm, Plaintiff must show not only that he is incarcerated under conditions posing a substantial risk of serious harm, but that the prison officials named as Defendants must have acted with a sufficiently culpable state of mind in subjecting him to such harm. Section 1983 liability cannot be imposed vicariously against a supervisory official merely on the theory of *respondeat superior*. *Rizzo v. Goode*, 423 U.S. 362, 375 (1976); *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990). A defendant in a civil rights action must have personal involvement in the alleged wrongs. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence, but such allegations of participation or actual knowledge and acquiescence must be made with

11

appropriate particularity. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)(citations omitted). In order to state a claim under § 1983, a complaint must "contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiff[]." *Freedman v. City of Allentown, Pennsylvania*, 853 F.2d 1111, 1114 (3d. Cir. 1988). Plaintiff's Complaint makes no specific factual allegations of any instances in which these Defendants personally caused him serious harm. Nor does Plaintiff's Complaint make any specific factual allegations of any instances in which Defendants had actual knowledge that he was exposed to a substantial risk of serious harm that Defendants deliberately disregarded so as to allege that they had the requisite culpable state of mind for them to be liable under § 1983.

Even if the Complaint stated a plausible claim that Defendants had violated a constitutionally protected liberty interest of Plaintiff's - which it does not, as stated above - Plaintiff would be unable to obtain the mandamus-type relief that he seeks. It is well settled that a writ of mandamus[14] is a drastic remedy which is used by courts only in "exceptional circumstances." The writ is infrequently used by federal courts, and its use is usually limited to cases where a federal court is acting in aid of its own jurisdiction. *See* 28 U.S.C. § 1361; *Gurley v. Super. Ct. of Mecklenburg County*, 411 F.2d 586, 587-88 & nn.2-4 (4th Cir. 1969). A federal district court may issue a writ of mandamus *only against an employee or official of the United States. Moye v. Clerk, DeKalb County Sup. Court*, 474 F.2d 1275, 1275-76 (5th Cir.1973)(federal courts do not have original jurisdiction over mandamus

---

[14] *See Black's Law Dictionary* (8th ed. 2004) (mandamus: "A writ issued by a superior court to compel a lower court or a government officer to perform mandatory or purely ministerial duties correctly.")

actions to compel an officer or employee *of a state* to perform a duty owed to the petitioner); *see also In re Campbell*, 264 F.3d 730, 731 (7th Cir. 2001)(same; collecting cases)*; In re Carr*, 803 F.2d 1180, 1180 (4th Cir., Oct 24, 1986)(unpublished opinion)(same).

In *Gurley*, a state prisoner sought a writ of mandamus to compel the Superior Court of Mecklenburg County (North Carolina) to prepare a free transcript. The district court denied the relief sought by the prisoner. On appeal in *Gurley*, the United States Court of Appeals for the Fourth Circuit concluded that it was without jurisdiction to issue a writ of mandamus because it exercised no supervisory authority over the courts of the State of North Carolina. The Court also held that, if the prisoner's petition were treated as an appeal from the district court's order denying the issuance of the writ, the district court did not have authority to issue a writ of mandamus: "Even if we were to liberally construe this petition as an appeal from the denial of the issuance of a writ of mandamus by the District Court[,] we still have no jurisdiction for the reason that the District Court was also without jurisdiction to issue the writ." *Gurley*, 411 F.2d at 587. The holding in *Gurley* was followed by the United States Court of Appeals for the Second Circuit in *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988). In *Davis*, the court ruled that "[t]he federal courts have no general power to compel action by state officials[.]" *Davis*, 851 F.2d at 74. In *Craigo v. Hey*, 624 F. Supp. 414 (S.D. W. Va. 1985), the district court concluded that the petition for a writ of mandamus was frivolous within the meaning of 28 U.S.C. § 1915, and, therefore, was subject to summary dismissal. *Craigo*, 624 F. Supp. at 414. *See also Van Sickle v. Holloway*, 791 F.2d 1431, 1436 & n. 5 (10th Cir. 1986); *Hatfield v. Bowen*, 685 F. Supp.

478, 479 (W.D. Pa. 1988); *Robinson v. Illinois*, 752 F. Supp. 248, 248-49 & n. 1(N.D. Ill. 1990).

Defendants in this case are SCDC employees. SCDC is a state agency of the State of South Carolina. Consequently, the United States District Court for the District of South Carolina does not have jurisdiction in this case to issue a writ of mandamus ordering Defendants to take any action or refrain from taking any action with respect to Plaintiff's request for a transfer to another correctional institution. This Court lacks subject matter jurisdiction to consider such a request and to grant such relief, and Plaintiff's Complaint should be dismissed, without prejudice and without issuance and service of process, on this additional basis. *See* Fed. R. Civ. P. 12(h)(3), Fed. R. Civ. P. 41(b)(dismissal for lack of jurisdiction is *not* deemed to be an adjudication on the merits).

Plaintiff fails to establish that he is entitled to relief in this Court because the factual allegations in his Complaint are not sufficient to state a plausible claim that Defendants deprived Plaintiff of any constitutionally protected right to due process or equal protection under the Fourteenth Amendment or that Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

## **RECOMMENDATION**

Accordingly, it is recommended that the District Court dismiss Plaintiff's Complaint, without prejudice and without issuance and service of process. *See Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams,* 490 U.S. 319 (1989); *; Haines v. Kerner*, 404 U.S. 519 (1972); *Brown v. Briscoe*, 998 F.2d 201, 202-04 (4th Cir. 1993); *Boyce v. Alizaduh; Todd v. Baskerville*, 712 F.2d at 74; *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A

(as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

Plaintiff's attention is directed to the important notice on the next page

s/ Bruce Howe Hendricks<br>
United States Magistrate Judge

February 15, 2011
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>Larry W. Propes, Clerk
>United States District Court
>Post Office Box 835
>Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).